FILED
CLERK

5:06 pm, Jul 21, 2026

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------X
UNITED STATES OF AMERICA,

    -against-

FAUSTIN NSABUMUKUNZI,

                Defendant.
-----------------------------------------------X

ORDER
25-CR-0138(JS)(LGD)

APPEARANCES
For Defendant:        Kathryn Wozencroft, Esq.
                Benjamin Yaster, Esq.
                Federal Defenders of New York, Inc.
                One Pierrepont Plaza, 16th Floor
                Brooklyn, New York, 11201

                Evan Sugar, Esq.
                200 Vanderbilt Motor Parkway, Suite C-17
                Hauppauge, New York, 11788

For the          Katherine P. Onyshko, Esq.
Government:      United States Attorney's Office
                271-A Cadman Plaza East
                Brooklyn, New York, 11201

                Samantha Alessi, Esq.
                United States Attorney's Office
                610 Federal Plaza
                Central Islip, New York, 11722

                Brian Morgan, Esq.
                Department of Justice
                Human Rights and Special Prosecutions
                Section 1301
                New York Avenue Northwest
                Washington, DC 20530

SEYBERT, District Judge:

        The Court issues this Memorandum & Order to memorialize

certain decisions it made at the July 20, 2026 status conference

1

(the "Status Conference") in the above-captioned action.  (See July 20 Minute Entry, ECF No. 54.) At the Status Conference, the Court: (1) overruled the Objection (Obj., ECF No. 48) of Defendant Faustin Nsabumukunzi ("Defendant") to a Report and Recommendation issued by Magistrate Judge Dunst on June 1, 2026 ("R&R", ECF No. 46), which recommended this Court deny his Motion to Compel production of the Government's list of trial witnesses (see Motion to Compel, ECF No. 35); (2) adopted said R&R, thereby denying the Motion to Compel; and (3) granted Defendant's Motion for Discovery Letter Rogatory ("Letter Rogatory Motion," ECF No. 36), as amended, which seeks certain information in Rwanda.  Although its decisions are reflected on the record, the Court memorializes its rationales below.

**BACKGROUND**

I.   Factual Background

Per Judge Dunst in the R&R:

> On April 22, 2025, a grand jury in the Eastern District of New York returned an indictment charging Nsabumukunzi with three immigration-related offenses: visa fraud, in violation of 18 U.S.C. § 1546(a); attempted unlawful procurement of naturalization, in violation of 18 U.S.C. § 1425(a); and attempted procurement of naturalization when not entitled, in violation of 18 U.S.C. § 1425(b). See ECF No. 1 (the "Indictment"). According to the Indictment, Nsabumukunzi was born in Rwanda in 1960 and applied for refugee resettlement in the United States in 2003. Id.

2

¶¶ 8, 10. The charges arise from the Defendant's purported failure to disclose his alleged participation in the 1994 Rwandan genocide on his U.S. immigration applications submitted between 2003 and 2016. See id. ¶¶ 10-14; Opp. at 2. Over the span of several months in 1994, several hundred thousand people were "raped, mutilated and murdered" in ethnic-related violence in Rwanda. See id. ¶ 4.

The government intends to prove at trial that the Defendant allegedly participated in the genocide through eyewitness accounts of his conduct in Kibirizi — a small rural community in southern Rwanda where the alleged events occurred during an approximately two-month period beginning in April 1994. See id. ¶¶ 7, 9. At the time, Defendant served as the Sector Counselor of Kibirizi, a high-ranking local government official in the area. See id. ¶ 8. After immigrating to the U.S., Nsabumukunzi moved to Bridgehampton, New York. See Mot. to Compel at 8. He was arrested, arraigned, and released on bail on April 24, 2025. See Opp. at 2.

To date, the government has produced substantial discovery to Defendant. Pursuant to Federal Rule of Civil Procedure 16, the government produced various materials, including files received from the International Criminal Tribunal for Rwanda ("ICTR"); documents from the Republic of Rwanda pertaining to gacaca court proceedings against Nsabumukunzi; documents from Rwanda's National Public Prosecution Authority ("NRPA") proceedings against Nsabumukunzi; approximately 90 photographs; and more than 1,000 pages of general background materials on the Rwandan genocide. See Opp. at 2-3. The government also conducted a reverse proffer with Defendant's counsel in December 2025, in which it identified key evidence and testimony underlying the charged conduct, and voluntarily made available for defense counsel's review approximately 98 pages of

3

witness statements and related materials at the United States Attorney's Office. See id. at 3.

On April 10, 2026, Defendant filed the Motion to Compel seeking disclosure of trial witness identities at least 60 days before any planned travel to Rwanda, on an attorneys' eyes only basis. See ECF No. 35 at 1. Defendant also filed the Motion for Discovery that same day, seeking a letter rogatory to be transmitted to the Rwandan Ministry of National Unity & Civic Engagement for the production of gacaca information-gathering records for the relevant geographic region. See ECF No. 36 at 1. Judge Seybert later referred both motions to the undersigned for a Report and Recommendation. See April 14, 2026 Order.

In response to [ ] Judge Seybert's instruction, the government advised Defendant on March 4, 2026 that the anticipated composition of its trial witness [list] included approximately 10 witnesses [who] reside in Rwanda, one witness [who] resides in Kenya, and one witness resides in the United States. See id. The government has represented that it will disclose the names of its trial witnesses and material pursuant to 18 U.S.C.§ 3500 two weeks before the trial (which is currently scheduled for December 7, 2026). See ECF Nos. 37, 41 at 4. In a supplemental filing on May 18, 2026, the government informed the Court that the names of seven of their trial witnesses are included in the discovery already produced to Defendant. See ECF No. 45. Defendant also clarified with the Court that his request for the government's trial witness names on an attorneys' eyes-only basis includes the anticipated witnesses living in Rwanda, as well as the two witnesses living in

4

Kenya and the United States, respectively. See ECF No. 44.

(R&R at 2-4 (footnote deleted).[1])

II.    The R&R

On June 1, 2026, Judge Dunst issued the R&R, recommending this Court deny the Motion to Compel.  (See generally R&R.) Although he acknowledged "district courts have authority to compel pretrial disclosure of the identity of government witnesses," he concluded disclosure was not warranted, as courts generally disfavor witness-list disclosure in cases involving allegations of violent crimes.  (R&R at 4-6 (quoting United States v. Cannone, 528 F.2d 296, 300 (2d Cir. 1975)).)  In Judge Dunst's view, the Government went "beyond vague, boilerplate concerns of witness safety" by explaining "actual witnesses have already expressed personal safety fears and described concern about contact from the defendant because of the horrors they experienced."  (Id. at 6.)

Judge Dunst also found the Government had produced "more than ample materials necessary to paint a fulsome picture of the relevant actors while in Rwanda," including materials identifying seven of the ten Rwanda-based witnesses.  (Id. at 8.) He further criticized Defendant's proposed disclosure deadline—60 days before

---

[1] Gacaca courts are community-led courts used in Rwanda to conduct proceedings related to the Rwandan Genocide.  AMNEST INT'L., RWANDA GACACA:    A    QUESTION    OF    JUSTICE    1, https://www.amnesty.org/en/documents/afr47/007/2002/en/    (2002) (last visited July 21, 2026.).

any defense trip to Rwanda—as "effectively vesting in defense counsel the unilateral ability to trigger disclosure at will by scheduling travel to Rwanda." (Id. at 9-10.)

Although Defendant relied on several similar immigration-related cases involving alleged Rwandan genocide perpetrators in which the Government voluntarily disclosed witness identities, Judge Dunst concluded Defendant's alleged senior governmental role distinguishes this case. (Id. at 10-11.) He reasoned the geographic overlap between witnesses and alleged genocide perpetrators created intimidation risks beyond the Court's ability to control, alluding to NGO and State Department reports the Government cited to, which indicate adverse treatment genocide witnesses have received. (Id. at 7 (citing Motion to Compel Opp'n, ECF No. 41, at 7-8).) He also explained the Government's approach in past cases did not "bind this Court or the Department of Justice, and the Government is permitted to take a more cautious approach based on the factual circumstances of this case." (Id. at 11.) Finally, he rejected Defendant's proposed attorneys'-eyes-only disclosure, reasoning that such a limitation "has no bearing on private Rwandan residents taking that same opportunity once they are able to observe the defense team's narrowed investigation of only twelve people in a small community in Rwanda." (Id. at 11-12.)

Because Defendant's Motion seeking a letter rogatory was partially contingent on first obtaining the identities of the Government's witnesses, Judge Dunst held that Motion in abeyance pending this Court's resolution of the R&R, rather than deciding it on the merits. (Id. at 12.)

## III.   The Motions & July 20 Status Conference

On June 18, 2026, Defendant filed his Objections to the R&R.   (See generally Obj.) Defendant argues the R&R purportedly misapplied the balancing test articulated in Cannone by characterizing the Government's witness-safety concerns as particularized and specific while discounting the defense's unique investigative needs.   (Obj. at 1-2 (citing 528 F.2d 296).) Specifically, Defendant argues the Government's descriptions of post-genocide conditions in Rwanda are not tied to Defendant himself. (Id. at 2-3.) Defendant further contends the Government's reliance on the unattributed "safety concerns" of unnamed interviewees amounts to the type of "vague assertions of the potential vulnerability of some witnesses" that courts have found insufficient. (Id. at 2-3) Defendant also argues the Government's safety rationale is undermined by its prior disclosure of several witness identities.   (Id. at 3.) Finally, Defendant argues that, unlike the gang and organized crime cases relied upon by the R&R, he: has no present-day network, resources, or connections in

7

Rwanda; has not set foot in Rwanda in more than 30 years; and, has lived compliantly in the United States for more than two decades. (Id. at 4 (citing R&R at 6).)  The defense also disputes the Magistrate Judge's characterization of Defendant as a "high-ranking" government official, arguing Defendant's alleged position as an unpaid sector councilor in a small rural community was a low-level role that does not support an inference of ongoing influence over potential witnesses.  (Id. at 4–5.)

The defense also challenges the Magistrate Judge's characterization of presently-produced materials as sufficient, which it contends is a factual error. (Id. at 5-6.)  According to Defendant, the Government has disclosed only portions of the relevant witness information by embedding seven anticipated witnesses among more than 20 names appearing in discovery while withholding the identities of three anticipated Rwanda-based witnesses altogether. (Id.)  As a result, Defendant argues he must investigate more individuals than necessary, imposing a significant and asymmetric investigative burden.  (Id. at 8.) Defendant also objects to the R&R's conclusion that his proposed disclosure deadline—60 days before any defense trip to Rwanda—was untethered to a fixed date.  (Id. at 6.) According to Defendant, the Defender Services Office's denial of travel authorization due to the Ebola-related travel advisory confirms that the timing of

8

any such trip was never within defense counsel's unilateral control. (Id. at 6-7.)

**Analysis**

I.  R&R Ruling

    a. Standard of Review

First, because the R&R and Objection concern a non-dispositive matter, Federal Rule of Criminal Procedure 59(a) authorizes this Court to set aside only portions of the R&R that are "contrary to law or clearly erroneous." See FED. R. CRIM. P. 59(a). Defendant nevertheless contends de novo review is the appropriate standard, as the Court is reviewing an R&R and not a decision. (See Obj. at 1.) Although the Court concludes the R&R's non-dispositive subject matter compels a review for only conclusions that are "contrary to law or clearly erroneous," it would reach the same conclusion applying the de novo standard, for the reasons discussed below.

    b. Why Denial is Warranted

Under Cannone, a district court has discretion to order pretrial disclosure of Government witnesses where Defendant has made "a specific showing that disclosure was both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case." United States v. Bejasa,

9

904 F.2d 137, 139–40 (2d Cir. 1990) (quoting Cannone, 528 F.2d at 300).  Such determinations are reviewed for abuse of discretion. Cannone, 528 F.2d at 300.

Judge Dunst did not abuse his discretion in determining Defendant fell short of the "material and reasonable" standard. As Judge Dunst observed, the Government has already produced voluminous discovery, including materials identifying approximately 20 potential witnesses.  (See R&R at 8-9.) The Government further emphasizes that "[w]orking through a list of approximately 20 names months before trial is not an unreasonable task," a line of argument this Court finds compelling.  (Response to Obj., ECF No. 53 at 4.)

In addition to the reasons set forth in Judge Dunst's R&R, the Court finds denial is independently warranted for another reason.  Because Defendant's planned August trip to Rwanda has been postponed, Defendant now has additional time to utilize the discovery already produced before it becomes necessary to compel the disclosure of the Government's witness list.  As Cannone recognized, "[t]he general discretion of district courts to compel the government to identify its witnesses is acknowledged widely." 528 F.2d at 299.  Accordingly, because the Court finds the postponement of Defendant's trip to be a significant change in

10

circumstances, it concludes that disclosure of the witness list would also be unwarranted even under de novo review.

Although the Court denies the Motion at this time, it recognizes the unique investigative and logistical challenges this case presents.  Later, Defendant may be able to demonstrate that those challenges make "[w]orking through a list of approximately 20 names" a more difficult task than currently contemplated.  As litigation of this case progresses, Defendant may be able to make "a particularized showing of need" required to obtain pretrial disclosure of the Government's witness list.  United States v. Remire, 400 F. Supp. 2d 627, 632 (S.D.N.Y. 2005).  Should Defendant exhaust the available investigative avenues and make such a showing, he may renew his Motion.

### III.   Letter Rogatory Excerpts

On April 10, 2026, Defendant moved "for a letter rogatory to be transmitted to the Rwandan Ministry of National Unity & Civic Engagement [("MINUBUMWE")], for the production of gacaca information-gathering records."  (Letter Rogatory Motion at 1.) Defendant has filed a proposed letter rogatory.  (Def.'s Proposed Letter Rogatory, ECF No. 43-2.)  While the Government does not object to issuance of the letter rogatory, it does object to three terms in Defendant's Proposed Letter Rogatory.  (See generally

11

Surreply, ECF No. 51; see also Govt.'s Proposed Letter Rogatory, ECF No. 51-1.) Specifically, the parties dispute whether the letter rogatory should: (1) request testimony or information provided by specifically identified witnesses (the "Specific Witnesses Request"); (2) require production of the complete gacaca information-gathering records if MINUBUMWE cannot isolate the responsive portions (the "Unexcerpted Records Request"); and (3) permit Rwanda's Ministry of National Unity and Civic Engagement ("MINUBUMWE") to provide the requested records directly to defense counsel in Rwanda, rather than transmitting them to the Court (the "Production Request").  (See Letter Rogatory Reply, ECF No. 43; Surreply.)  The Court addresses each request in turn.

### a. Specific Witnesses Request

Defendant's proposed letter rogatory requests "[t]estimony or information provided by the following witness: [INSERT NAMES]."  (Def.'s Proposed Letter Rogatory at 2 (placeholder in original).) In his Reply, Defendant acknowledges this request may be "insufficiently specific because we have not identified the witnesses whose statements we seek," but argues defense counsel cannot provide those names because "only the government can."  (Letter Rogatory Reply, ECF No. 43, at 2.) Defendant therefore proposes that, if the pending Motion to Compel is granted, the final letter rogatory should request the prior

12

gacaca statements of the Government's anticipated trial witnesses. (Id.)

The Government persuasively argues this request constitutes an improper attempt to circumvent the Court's ruling on the R&R. (Surreply at 3.) Indeed, the Specific Witnesses Request seeks substantially the same relief as does the Motion to Compel, i.e., disclosure of the identities of the Government's anticipated witnesses. Because the Court has denied the Motion to Compel, it likewise DENIES Defendant's request to include specific witness names in the letter rogatory.

   b. Unexcerpted Documents Request

Defendant's Proposed Letter Rogatory provides "[i]f MINUBUMWE is unable to excerpt these responsive portions of the gacaca information-gathering records, then the full gacaca information-gathering records for the Henene, Gitwa, Burashi, and Gisororo cells should be produced." (Def.'s Proposed Letter Rogatory at 2.)

The Government cites several cases holding that subpoenas seeking "all" documents violate Federal Rules of Criminal Procedure's Rule 17(c)'s prohibition against "unreasonable or oppressive" subpoenas. (See Surreply at 4 (citing FED. R. CRIM. P. 17(c).) For example, in United States v. Barnes,

13

2008 U.S. Dist. LEXIS 125298, at *11 (S.D.N.Y. Apr. 1, 2008), a Southern District court quashed a subpoena that "blindly s[ought] 'all' documents and records." (Letter Rogatory Surreply, ECF No. 51, at 4.)

Read in context, Defendant's proposed language does not constitute a fishing expedition, and the Court finds these cases are distinguishable. Unlike the subpoenas at issue in the Government's cited cases, Defendant's proposed language does not seek production of the complete gacaca records in the first instance. Rather, production of the complete records is requested only if MINUBUMWE is unable to excerpt the responsive portions. Put differently, the request for the complete records functions solely as a fallback mechanism available to MIUBUMWE for its convenience. None of the authorities cited by the Government addresses a circumstance in which production of "all" records is requested only as an alternative to a more narrowly tailored request. Accordingly, because the broader request operates only as a fallback and for the convenience of the provider, the Court GRANTS Defendant's request to include this language in the letter rogatory.

c. Production Request

As an alternative to producing the records to the Court, Defendant's proposed letter rogatory offers MINUBUMWE the option

14

of "[p]roviding these records in person to defense counsel [ . . .] and their staff at MINUBUMWE's offices on a date to be determined in August 2026." (Def.'s Proposed Letter Rogatory at 2.) Defendant contends this language serves to "offer an alternative method of production by making these requested records available in person to the defense when [it] travel[s] to Rwanda in August." (Letter Rogatory Reply at 3.) The Government argues Rule 17(c) requires subpoenaed materials to be returned to the Court, rather than directly to defense counsel, and further contends the Production Request is now moot because defense counsel is no longer traveling to Rwanda in August. (Letter Rogatory Surreply at 5 (citing Fed. R. Crim. P. 17(c)(1)).)

The Court agrees that, at least presently, Defendant's request is moot because the anticipated August trip to Rwanda is no longer taking place. In any event, Defendant's request that "the letter rogatory offer an alternative method of production by making these requested records available in person to the defense when [it] travel[s] to Rwanda in August" appears inconsistent with Rule 17(c)'s textual requirement that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." FED. R. CRIM. P. 17(c)(1). Accordingly, the Court DENIES Defendant's request to include this proposed language.

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's Objection to the R&R is OVERRULED and Judge Dunst's R&R is ADOPTED; therefore, the Motion to Compel is DENIED. It is further ORDERED that Defendant's Letter Rogatory Motion is GRANTED, as modified,[2] in accordance with the "So Ordered" Letter Rogatory attached as Exhibit A.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: July 21, 2026
      Central Islip, New York

---

[2]  Since the Court has ruled upon Defendant's motion seeking the Letter Rogatory, this Court's referral of said motion to the Magistrate Judge is rescinded.

16